*State of Maryland v. Hassan Emmanuel Jones*, No. 52, September Term, 2018

**CRIMINAL PROCEDURE — SUFFICIENCY OF THE EVIDENCE — ACCOMPLICE CORROBORATION RULE —** The accomplice corroboration rule, as it was structured at the time of trial, required evidence independent of accomplice testimony to implicate a defendant in a crime or identify the defendant with the perpetrators of the crime at or near the time it was committed. That evidence was not presented here, and thus the Court of Appeals affirmed the judgment of the Court of Special Appeals overturning the conviction of Respondent as being legally insufficient.


**CRIMINAL PROCEDURE — ACCOMPLICE CORROBORATION RULE — ABROGATION —** The accomplice corroboration rule, in its most stringent form, precludes convicting a defendant based solely on the testimony of the defendant's accomplices. Slight corroborative evidence is required to sustain a conviction. The rule applies in a minority of states and is grounded in outdated legal reasoning. Presented with an opportunity to reevaluate the rule and after thorough examination of its utility, the Court of Appeals abrogated the accomplice corroboration rule as it was structured, leaving it exclusively to the jury to assess the credibility of accomplice testimony. In place of the now-abrogated rule, a trial judge should give a cautionary jury instruction when the State introduces accomplice testimony.

Circuit Court for Baltimore County
Case No. 03-K-15-005488
Argued: January 31, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 52

September Term, 2018

STATE OF MARYLAND

v.

HASSAN EMMANUEL JONES

Barbera, C.J.,
*Greene
McDonald
Watts
Hotten
Getty
Wilner, Alan M., (Senior Judge,
Specially Assigned)

JJ.

Opinion by Barbera, C.J.
McDonald, J., concurs and dissents.
Watts, J., concurs and dissents.
Hotten and Greene, JJ., concur and
dissent.

Filed: August 28, 2019

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

We are presented here with an opportunity to reconsider Maryland's common law accomplice corroboration rule, which requires that accomplice testimony be independently verified to sustain a conviction. For reasons that follow, we abrogate the rule and hold that the jury, after proper instruction about the possible unreliability of accomplice testimony, is entitled to weigh the sufficiency of such evidence without the need for independent corroboration. First, though, we must apply the current accomplice corroboration rule to resolve the present case. In doing so, we affirm the judgment of the Court of Special Appeals, which overturned Respondent's conviction based on the lack of independent evidence that would corroborate the accomplice testimony.

## I.

### Facts and Procedural History

A. *The Underlying Incident*.

Around 4:30 a.m. on August 9, 2015, Sandeep Bhulai's body was discovered lying next to his vehicle, which was idling with the doors ajar. Mr. Bhulai had been shot multiple times—once in the head, once in the neck, once in the chest, once in the left elbow, and twice in the left arm. The police found 9-millimeter and .380 caliber cartridge casings surrounding Mr. Bhulai. The police collected fingerprints from Mr. Bhulai's vehicle and a motor scooter that was found near the scene.

The investigation led police to six suspects: (1) Christian Tyson; (2) Keith Harrison; (3) Kareem Riley; (4) Ramart Wilson; (5) Michael Jobes; and (6) Hassan Jones, Respondent here. Fingerprints from Harrison, Riley, Wilson, and Tyson were discovered at the crime scene. Later that summer, police arrested Harrison for marijuana possession

and found a .380 caliber handgun that matched the one used in Mr. Bhulai's murder. After interviewing a few of the suspects who implicated Jobes, police executed a search warrant on Jobes's home and found Mr. Bhulai's cell phone. Cell phone locational data placed phones related to all the suspects, except Respondent and Tyson, near the scene of the murder on the night in question. Respondent was implicated solely by the accounts of Tyson, Riley, and Wilson. Wilson identified Respondent in a photograph, which was allegedly taken on the night of the murder, by writing Respondent's nickname, "Teefy," in front of Respondent's image.[1]

B. *Respondent's Arrest and Trial*.

On September 10, 2015, police arrested Respondent. Respondent initially denied having a nickname, cell phone, and any knowledge of the crime or the other five suspects. After Respondent's cell phone number was discovered in Jobes's phone and vice versa, Respondent conceded that he had a cell phone and had the nickname "Teefy;" yet Respondent continued to deny that he knew Jobes. Respondent was later charged with first- and second-degree murder, first-degree felony murder, use of a firearm during a violent crime, conspiracy to commit armed carjacking, and armed robbery.

At Respondent's trial, Tyson, Riley, and Wilson testified pursuant to plea agreements. Their testimony was consistent and demonstrated that the group, including Respondent, attended a party in Reisterstown and then an "after party" in Woodlawn on the night of the murder starting sometime around 9 p.m. The State entered into evidence a

---

[1] Although Wilson identified Respondent in the photograph as "Teffy," the State, in its briefs, and the trial transcripts refer to him as "Teefy." This bears no significance to the issues at hand.

photograph that Wilson testified was taken on his cell phone sometime between 12:30 a.m. and 1:40 a.m. and depicted Wilson, Respondent, and the rest of the group. Wilson testified that after leaving the party, the group agreed to go to Middle River to steal something. When they reached a residential area, the group split up. Wilson further testified that he, Riley, and Harrison attempted to steal a motor scooter, but they were unable to trigger the ignition. Wilson then helped Riley return to Riley's car because he was "very intoxicated." Meanwhile, Harrison left to reconnect with the others.

Mr. Bhulai was killed between 3:00 and 3:15 a.m. Tyson testified about the murder. He said that the group, including Respondent, forced Mr. Bhulai out of his car at gunpoint. While holding Mr. Bhulai at gunpoint, Tyson took Mr. Bhulai's cell phone. Jobes, Harrison, and Respondent then shot Mr. Bhulai multiple times. Immediately after the shooting, Jobes took Mr. Bhulai's wallet, and the group fled to Riley's car.

Riley and Wilson, who remained in Riley's car during the murder, both testified that they heard gunshots. Shortly thereafter, the group returned and Harrison, Jobes, and Respondent were all carrying handguns. According to Riley's testimony, Respondent told him to "hurry up and get us away from here, we just shot someone."

In addition to the accomplices' testimony, the State presented testimony from detectives and forensic experts and offered physical evidence. Although that evidence "generally corroborated" the accomplices' testimony regarding *their* "movements and activities that evening," none of the physical evidence (i.e., locational data and fingerprints) directly implicated Respondent.

3

After the State closed its case, Respondent moved for a judgment of acquittal on all charges, arguing that the accomplices' testimony was not corroborated. The court denied the motion, ruling that the photograph on Wilson's phone served as independent corroboration. Respondent did not put on a defense case.

Among other instructions, the court instructed the jury that the accomplice testimony must be independently corroborated. The court read pattern instruction MPJI-3:1—Testimony of Accomplice—set forth in the Maryland State Bar Standing Committee on Pattern Jury Instructions, *see* MPJI-Cr 3:11 Testimony of Accomplice, which, with the names added, states:

> You have heard testimony from Christian Tyson, Kareem Riley and Ramart Wilson who were accomplices. An accomplice is one who knowingly and voluntarily cooperated with, aided, advised or encouraged another person in the commission of a crime. The Defendant cannot be convicted solely on the uncorroborated testimony of an accomplice. You must first decide whether the testimony of Christian Tyson, Kareem Riley and Ramart Wilson was corroborated before you consider it. Only slight corroboration is required. This means there must be some evidence which you believe in addition to the testimony of Christian Tyson, Kareem Riley and Ramart Wilson that shows either, one, that the Defendant committed the crime charged; or two, that the Defendant was with others who committed the crime at or about the time and place the crime was committed.
> If you find that the testimony of Christian Tyson, Kareem Riley and Ramart Wilson has been corroborated, you may consider it but you should do so with caution and give it the weight you believe it deserves. If you do not find that the testimony of Christian Tyson, Kareem Riley and Ramart Wilson has been corroborated, you must disregard it and may not consider it as evidence against the Defendant.
> You have heard evidence that Christian Tyson, Kareem Riley and Ramart Wilson have pleaded guilty to a crime arising out of the same events for which the Defendant is now on trial. The guilty plea of th[ese] witness[es] must not be considered as evidence against this [D]efendant. You may consider the testimony of a witness who testifies for the State as a result of a plea agreement. However, you should consider such testimony with caution because the testimony may have been influenced by a desire to gain a benefit by testifying against the Defendant.

4

Of all the charges, the jury convicted Respondent only of conspiracy to commit armed carjacking. Respondent then moved for a new trial, again asserting that the accomplices' testimony lacked the requisite independent corroboration. The trial judge again denied the motion and imposed a thirty-year sentence.

Respondent appealed, and a three-judge panel of the Court of Special Appeals, in an unreported opinion, reversed the judgment of conviction. The court held that the accomplices' testimony was not independently corroborated by other evidence, leaving the remaining evidence legally insufficient to sustain Respondent's conviction.

The panel of the Court of Special Appeals then suggested that this Court might reconsider the accomplice corroboration rule. Judge (now Chief Judge) Fader, writing on behalf of the panel, expressed skepticism that the current rule strikes the "best balance between the potential dangers of accomplice testimony and its potential value." The Court of Special Appeals hinted that this Court should consider adopting a modified version of the common law rule for accomplice testimony, under which the jury would decide how much weight to afford accomplice testimony, guided by a cautionary instruction about the possible unreliability of such testimony.

The State filed a petition for a writ of certiorari, which we granted. *State v. Jones*, 461 Md. 612 (2018). The State poses two questions for our consideration:

> (1) Did the Court of Special Appeals err in determining that Jones's demonstrably false statements exhibiting a consciousness of guilt about Bhulai's murder were not sufficient to corroborate the accomplices' testimony and therefore the evidence was not sufficient to convict Jones of conspiracy to commit armed carjacking?

5

(2) In the alternative, should the accomplice corroboration rule that a person may not be convicted on the uncorroborated testimony of an accomplice be replaced or revised to allow the factfinder to measure the weight of the evidence and judge the credibility of accomplices, with appropriate instruction about accomplice testimony?

## II.

## Discussion

For reasons we shall explain, we hold that the Court of Special Appeals did not err in its application of the extant accomplice corroboration rule. We further hold that the rule, as currently structured, be abrogated. In place of that rule, we adopt today a new rule that will no longer require that accomplice testimony be corroborated by independent evidence to sustain a conviction. We do so in exercise of our constitutional authority to change the common law. *Harrison v. Montgomery Cty. Bd. of Educ.*, 295 Md. 442, 459 (1983). Indeed, "we have never construed [the doctrine of *stare decisis*] to inhibit us from changing or modifying a common law rule by judicial decision where we find, in light of changed conditions or increased knowledge, that the rule has become unsound[.]" *Id.*

A. *Sufficiency of the Evidence of Independent Corroboration?*

We begin with the first question presented—whether the Court of Special Appeals properly applied the current accomplice corroboration rule to the facts of this case.

The accomplice corroboration rule requires exactly what its name suggests—that the State must present independent corroboration of accomplice testimony to sustain a conviction. *See Williams v. State*, 364 Md. 160, 179 (2001) ("[I]n Maryland . . . a conviction may not rest on the uncorroborated testimony of an accomplice[.]"); *Collins v. State*, 318 Md. 269, 280 (1990) ("The rule in Maryland [is] that a person accused of a crime

6

may not be convicted based on the uncorroborated testimony of an accomplice[.]"); Lynn McLain, Maryland Practice Series: Maryland Evidence State and Federal § 300:6(b)(ii), at 372-75 (3d ed. 2013). The rationale for the rule, the flaws of which we discuss below, is to combat the possible untrustworthiness of accomplice testimony because accomplices may lie to protect themselves. *See Watson v. State*, 208 Md. 210, 217 (1955) (stating that accomplice testimony "should be regarded with great suspicion and caution" because an accomplice may be incentivized to "shield himself from punishment" by blaming another or seek "clemency by turning State's evidence").

When reviewing a lower court's application of the rule, we evaluate whether "the corroborative evidence was legally sufficient to warrant submission of the case to the jury." *Wright v. State*, 219 Md. 643, 652 (1959). Our review is limited to ascertaining whether there exists any independent evidence "tending either (1) to identify the accused with the perpetrators of the crime or (2) to show the participation of the accused in the crime itself." *Ayers v. State*, 335 Md. 602, 638 (1994) (citation omitted); *see also Turner v. State*, 294 Md. 640, 646 (1982) (holding that "evidence offered as corroboration must be independent of the accomplice's testimony"). The corroborative evidence need only be "slight," but it must establish "either of [those] matters" before accomplice testimony can be submitted to the jury. *Ayers*, 355 Md. at 638. Our review is not to be "confuse[d] [with] the admissibility of evidence"; we are not concerned with whether the accomplice testimony is "admissible substantively" but rather whether that evidence, once admitted, is sufficiently corroborated to "sustain a conviction." *Turner*, 294 Md. at 646.

7

Respondent was convicted of conspiracy to commit armed carjacking, based solely on the accomplices' testimony. That conviction can be sustained only if there was evidence offered at trial that either connected Respondent to the others who agreed to commit the crime in proximity to the time and place it occurred or showed that he conspired with one or more of them to commit that crime. The State insists that such evidence was presented. We disagree.

When ruling upon the motion for judgment of acquittal at trial, the court relied solely on the group photograph taken on Wilson's cell phone at the "after party" and, according to Wilson, showed Respondent standing with him and the other accomplices. The court was persuaded that the photograph—State's Exhibit 106—"place[d] the [Respondent] with the perpetrators of the offense."

The State argues first that the photograph taken with Wilson's cell phone and purporting to depict Respondent with the accomplices provided the requisite independent corroborative evidence. According to the State, the photograph shows Respondent's presence with the other participants earlier on the night of the crime. We agree with the Court of Special Appeals that the photograph "cannot constitute independent corroboration because it depends entirely on Mr. Wilson's testimony." *Jones v. State*, No. 1988, 2016 Term, slip op. at 9 (Md. Ct. Spec. App. Aug. 8, 2018). This is so because the evidence cannot "pull[] itself up by its own bootstraps," meaning that the accomplice's testimony cannot be used to corroborate itself. *See Jeandell v. State*, 34 Md. App. 108, 112 (1976);

8

*see also Turner*, 294 Md. at 647 ("It would eviscerate the rule to allow an accomplice to corroborate himself.").[2]

The State's argument does not rest entirely on State's Exhibit 106, however, but rather on two additional evidentiary items:  Respondent's cell phone, which contained the contact information of at least two of the accomplices; and Respondent's post-arrest statements, in which he proffered an alibi and denied knowing the accomplices.  The State argues that, taken together, these items constitute circumstantial evidence that Respondent knew when and where the crime had occurred; he was associated with the accomplices when the conspiracy occurred; and he now seeks to distance himself from those facts given his consciousness of guilt.  Therefore, the State claims, the Court of Special Appeals erred in failing to consider that Respondent's false statements to the police sufficiently connected him to the crime and/or the accomplices in proximity to the crime, and thereby corroborated the accomplices' testimony.  *See Nolan v. State*, 213 Md. 298, 309 (1957) ("The corroborating evidence . . . may consist of . . . untruthful statements made by [the accused.]").

Respondent uttered the allegedly false statements during an interrogation immediately following his arrest.  After waiving his *Miranda*[3] rights, Respondent was

---

[2]  The State refers to a second photograph, State's Exhibit 107, which allegedly shows Respondent with Wilson, Tyson, and Jobes at a pool party a week after the conspiracy. This photograph suffers from the same flaw as Exhibit 106—it requires accomplice testimony to verify its contents. It suffers from an additional flaw in that, even if the current rule would allow such self-corroboration, the photograph was taken a week after the alleged conspiracy occurred and, as such, does not sufficiently connect Respondent to the accomplices proximate to the time and place of the crime.

[3]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

9

questioned about his whereabouts on the night in question. In response to a question about why he was in Essex, Respondent replied, "I wasn't there . . . I was probably asleep or something." Notably, the police had not provided Respondent with any information about the alleged crime. During a subsequent exchange, Respondent denied knowing his accomplices; yet, police found Harrison's and Jobes's phone numbers saved in Respondent's cell phone.

The State is correct that "corroborating evidence may be circumstantial and may consist of . . . untruthful statements made by [the defendant]." It cannot be overlooked, however, that such evidence and reasonable inferences drawn from it must either connect Respondent to "the commission of the crime," *Nolan*, 213 Md. at 309, or place him "with [his accomplices] at about that time," *McDowell v. State*, 231 Md. 205, 214 (1963). None of Respondent's statements "establish either of these matters." *Brown v. State*, 281 Md. 241, 244 (1977). We agree with and cannot improve upon the Court of Special Appeals' analysis on this point and therefore include it here:

> Here, Mr. Jones's false statement that he did not know his alleged accomplices does not get the State any closer to either of these points. Setting aside for the moment the testimony of the accomplices, nothing more than pure speculation ties Mr. Jones's denials to the carjacking conspiracy or the accomplices on the evening in question. Mr. Jones's interview took place more than a month after the murder. At that time, he may have lied for any number of reasons: he may not have wanted to be associated with individuals who he believed were involved with criminal activity or who had already been picked up by the police; he may have known one or more of them to be bad actors; he may have engaged in other criminal activity with them; or he may have just distrusted the police. Nothing in the record, other than the accomplices' testimony, indicates one of these reasons as being any more likely than any of the others.
>
> The State, relying on the Georgia Supreme Court's decision in *Threatt v. State*, 748 S.E.2d 400 (Ga. 2013), argues that Mr. Jones's false statements

10

are enough because, even if they do not relate to the specifics of this crime, they show consciousness of guilt. We disagree. . . . *Threatt* does not stand for the proposition that consciousness of guilt evidence alone can provide the necessary corroborative testimony. . . .

Moreover, even if consciousness of guilt were enough by itself, Mr. Jones's denials do not demonstrate consciousness of guilt of the crime at issue. Consciousness of guilt evidence requires four sequential inferences: "(1) from the defendant's behavior to [lying]; (2) from the [lying] to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *State v. Simms*, 420 Md. 705, 729 (2011) (quoting *Decker v. State*, 408 Md. 631, 642 (2009)). The circumstances here do not support this inferential chain. Stripped of the testimony of the accomplices, there is nothing more than sheer speculation to tie Mr. Jones's denial that he knew his alleged accomplices—coming more than a month after the murder—to consciousness of guilt of *this* crime. *See Decker*, 408 Md. at 642 (asserting that each inference requires evidentiary support).

Furthermore, if the accomplice corroboration rule can be defeated by a defendant's general denial of any knowledge of his alleged accomplices—without tying that in some way to the crime itself or the time and location of the crime—it is difficult to see how the rule would not be rendered meaningless. Corroboration need only be slight, but that does not mean that it can be wholly speculative.

*Jones*, slip op. at 11-13 (citations omitted) (footnote omitted); *see also Thomas v. State*, 372 Md. 342, 355-58 (2002) (noting that, without physical evidence connecting the defendant to the crime or the crime scene, the defendant's statement is "too ambiguous and equivocal" to constitute consciousness of guilt evidence).

Put simply, the inferences drawn by the State here are mere conjecture given the record before us, and, as the Court of Special Appeals aptly stated, "[c]orroboration need only be slight, but that does not mean that it can be wholly speculative."[4] *Jones*, slip op.

---

[4] Judge Watts, in her dissent, asserts that Respondent's false statements that he did not

(continued . . . )

at 13.  Accordingly, we hold that the State failed to corroborate the accomplices' testimony.

Without that testimony, it follows that the State did not provide legally sufficient evidence

to support Respondent's conviction of conspiracy to commit armed carjacking.  We

therefore affirm the judgment of the Court of Special Appeals reversing Respondent's

conviction.

Having resolved the State's first question, we turn next to the State's request that

we jettison the accomplice corroboration rule in favor of the common law rule that allowed

defendants to be convicted based solely on the testimony of an accomplice.  *See Luery v.*

*State*, 116 Md. 284, 292 (1911) ("It is true that at common law a verdict of the jury would

---

( . . . continued)

know the accomplices, coupled with his apparent knowledge about the date and time of the alleged crime, "elevated" those statements "to the slight independent corroboration necessary for the accomplices' testimony to be considered by the jury." *State v. Jones*, No. 52, Sept. 2018 Term, slip op. at 5 (Watts, J., concurring in part and dissenting in part).  But those statements illustrate nothing more than Respondent's knowledge of the accomplices' existence and apparent awareness of when the crime occurred.  Neither fact places Respondent at the scene of the crime or with the perpetrators of the crime near its commission.  Neither fact connects Respondent to the commission of the crime at all, unless one reads facts into the record (e.g., Respondent did not simply know the accomplices, but rather was closely associated with them) and then makes certain assumptions (e.g., because there was a close connection, Respondent must have been with the accomplices on the night in question).  To do so, however, requires engaging in the "mere speculation" Judge Watts warns against, *id.* at 2, particularly given the lack of physical evidence connecting Respondent to the crime.  Our holding is straightforward and in line with our precedent: false statements alone, absent a nexus to the commission of the crime or the perpetrators in proximity to the crime, do not constitute sufficient corroborative evidence to justify sending the case to the jury.  *See Wright v. State*, 219 Md. 643, 651 (1959) (crediting, among other evidentiary items, "false statements [made by the defendant] with respect to [the defendant's] *association with the accomplices a few minutes before the fire was set*" as sufficient corroborative evidence (emphasis added)); *Nolan v. State*, 213 Md. 298, 309 (1957) ("The corroborating evidence may . . . consist of . . . untruthful statements made by [the accused] *in respect to matters connected with the commission of the crime*" (emphasis added)).

12

not be set aside merely because [it was] founded on the evidence of an accomplice which was not corroborated[.]").

B. *Abrogation of the Accomplice Corroboration Rule*.

We begin with a bit of history found in VII John H. Wigmore, Wigmore on Evidence: Evidence in Trials at Common Law, § 2056 (Chadbourn rev. 1978). According to that treatise, concerns regarding accomplice testimony have existed since at least the 1600s. *Id.* § 2056, at 405. By the end of the 1700s, English courts had developed "a general practice . . . to discourage a conviction founded solely upon the testimony of an [uncorroborated accomplice]." *Id.* This practice was not a rule of law that bound the jury, but instead, "a mere exercise of [the judge's] common-law function of advising the jury upon the weight of the evidence." *Id.* The actual rule of law regarding accomplice testimony was uncontroverted—convictions based solely on accomplice testimony were legally sufficient. *Id.* § 2056, at 407 ("the judges are unanimously of the opinion that an accomplice alone is a competent witness, and that if the jury, weighing the probability of his testimony, think him worthy of belief, a conviction supported by such testimony alone is perfectly legal." (quoting *R. v. Atwood and Robbins* (1788), 1 Leach Cr. L. 464, 465 (4th ed. 1815))).

Courts in the United States followed suit and counseled juries to exercise caution when evaluating the reliability of accomplice testimony. *Id.* § 2056, at 407-08. Then, as described in Wigmore, "in a misguided moment[,] the orthodox function of the judge to assist the jury on matters of fact was (except in a few jurisdictions) eradicated from our system." *Id.* § 2056, at 416. Because judges could no longer assist the jury, "[t]he makers

13

of this innovation upon established trial methods were thus obliged to turn into a rule of law the old practice as to accomplices, if they wished to retain its benefit at all. This they therefore did." *Id.* § 2056, at 416-17.

In other words, because newly-established rules prevented judges from influencing how juries perceived the facts presented, jurisdictions assumed that a stringent or categorical approach was the only way to protect against the unreliability of accomplice testimony. As a consequence, "nearly half of the jurisdictions of the United States" adopted an accomplice corroboration rule, requiring, in varying degrees, that the testimony of an alleged accomplice be corroborated by independent evidence, that is, evidence not dependent on an accomplice. *Id.* § 2056, at 414-17.

Maryland was one such jurisdiction.[5] This Court adopted its version of the rule in 1911; before then, there was no common law corroboration requirement. *Luery*, 116 Md. at 293-94. We stated earlier in this opinion that our current accomplice corroboration rule prevents a defendant from being convicted solely on the testimony of his or her accomplices without independent, albeit slight, corroboration. *In re Anthony W.*, 388 Md. 251, 264 (2005). We have said that the accomplice corroboration rule was necessary for two reasons: "(1) the witness offering the testimony is admittedly contaminated with guilt

---

[5] It is unclear if this Court adopted the accomplice corroboration rule because the Court sought to retain the ability to instruct juries about the unreliability of accomplice testimony or because a majority of other jurisdictions had also adopted the rule, but both reasons are problematic. The law in Maryland, at the time the Court adopted the rule in 1911, was that "trial judges did not have to give instructions unless they wanted to and they rarely did." *Criminal Procedure Reform Achieved in Maryland*, 11 Md. L. Rev. 319, 320 (1950). Therefore, it seems unlikely that the Court was concerned about retaining an ability it rarely exercised.

and (2) the possibility of an ulterior motive on the part of the accomplice who seeks to curry favor with both the prosecutor and the police in the hope of obtaining a lesser sentence or a reduced charge." *Turner*, 294 Md. at 642 (citations omitted). Although never expressed by this Court, the Court of Special Appeals aptly explained in its unreported opinion in the case now before us that an underlying presumption of the accomplice corroboration rule is that jurors are "incapable of determining reliably the veracity of the accomplice testimony." *Jones*, slip op. at 6. It can be said, then, that the current accomplice corroboration rule represents an attempt to balance credibility concerns with the potential benefits of accomplice testimony.

Today, we seek to strike a better balance. Although, as structured, the accomplice corroboration rule addresses the credibility concerns discussed above, the manner in which the rule addresses those concerns is far from perfect. One of the main criticisms of the rule is that it operates indiscriminately regardless of the apparent credibility of the accomplices. We agree with the Court of Special Appeals that

> [o]n [the] one hand, the rule can act as a complete bar to a factfinder's consideration of potentially overwhelming evidence of guilt for want of a specific type of evidence. On the other hand, the restriction—and any protective value it might offer—evaporates entirely if the State is able to offer any slight piece of evidence of that type, even if that evidence is itself of minimal persuasive value. Stated differently, under this rule, a factfinder's consideration of evidence she or he might conclude is highly reliable can be forbidden in one case, while in a different case the same factfinder may be permitted to weigh a much lesser quantum of much more suspect evidence.

*Jones*, slip op. at 16; *see also Audett v. United States*, 265 F.2d 837, 847 (9th Cir. 1959) ("credibility is a matter of elusive variety, and it is impossible and anachronistic to

15

determine in advance that, with or without promise, a given man's story must be distrusted." (quoting Wigmore, § 2057, at 417)).

The arbitrariness of the accomplice corroboration rule is amplified when one considers that there is no similar rule for other interested witnesses. Testimony from jailhouse informants, for instance, is sufficient to sustain a conviction without corroboration even though such testimony is (arguably) less reliable than that of an accomplice. *See, e.g.*, *Correll v. State*, 215 Md. App. 483, 496-502 (2013) (allowing the jury to assess the credibility of jailhouse informant testimony); Russell D. Covey, *Abolishing Jailhouse Snitch Testimony*, 49 Wake Forest L. Rev. 1375, 1403 (2014) ("accomplice testimony retains at least some indicia of reliability because 'the accomplice inculpates herself in the process.'" (citation omitted)). Testimony of accessories after-the-fact, which also should be considered with caution because it might have been induced by the prosecution, similarly does not require corroboration. *See Rivenbark v. State*, 58 Md. App. 626, 634 n.1 (1984) ("If a witness qualifies merely as an accessory after the fact, he is not usually regarded as an accomplice and hence his testimony need not be corroborated."). The testimony of a witness who is paid by a party to do so (e.g., an expert witness) can, in a given case, raise similar reliability concerns; yet, once again, no corroboration requirement exists. *See Scott v. State*, 310 Md. 277, 294 (1987). It has also been said that "the greatest source of injustice in the form of conviction of innocent men is the erroneous identification by eye-witnesses," "[y]et the testimony of a customer in a bank who gets a fleeting glimpse of the robber and who identifies defendant as the man he saw is enough to convict the defendant, but the testimony of three or four of defendant's

16

partners, if uncorroborated, is insufficient under our law." Roy A. Gustafson, *Have We Created a Paradise for Criminals?*, 30 S. Cal. L. Rev. 1, 12 (1956). And, insofar as it limits the jury's ability to assess witness credibility, the accomplice corroboration rule runs afoul of the "fundamental principle of Maryland law that, in a criminal case tried before a jury, assessing a witness's credibility is a matter solely for the jury." *Devincentz v. State*, 460 Md. 518, 529 (2018).

Considering these and other concerns with the accomplice corroboration rule, it should come as no surprise that most jurisdictions (thirty-two states, the District of Columbia, the federal courts, Puerto Rico, Guam, and the Virgin Islands) either have not adopted the accomplice corroboration rule or have since repealed it.[6] Currently, Maryland

---

[6] *See Davis v. People*, 490 P.2d 948, 950 (Colo. 1971); *State v. Johnson*, 179 A.3d 780, 786 (Conn. App. 2017); *Brooks v. State*, 40 A.3d 346, 350 (Del. 2012); *Ali v. United States*, 581 A.2d 368, 377 n.17 (D.C. 1990); *Smith v. State*, 507 So. 2d 788, 790 (Fla. Dist. Ct. App. 1987); *State v. Carvelo*, 361 P.2d 45, 59 (Haw. 1961); *People v. Nitti*, 133 N.E.2d 12, 13 (Ill. 1956); *Lowery v. State*, 547 N.E.2d 1046, 1053 (Ind. 1989); *State v. Bey*, 535 P.2d 881, 888 (Kan. 1975); *State v. Kyles*, 233 So. 3d 150, 157-58 (La. Ct. App. 2016); *Commonwealth v. DeBrosky*, 297 N.E.2d 496, 504 (Mass. 1973); *State v. Reardon*, 486 A.2d 112, 119 (Me. 1984); *People v. Lemmon*, 576 N.W.2d 129, 137 n.22 (Mich. 1998); *Jones v. State*, 203 So. 3d 600, 607 (Miss. 2016); *State v. Sistrunk*, 414 S.W.3d 592, 598 (Mo. Ct. App. 2013); *State v. Huffman*, 385 N.W.2d 85, 90 (Neb. 1986); *State v. Thresher*, 442 A.2d 578, 582 (N.H. 1982); *State v. Spruill*, 106 A.2d 278, 280-82 (N.J. 1954); *State v. Montoya*, 384 P.3d 1114, 1120 (N.M. Ct. App. 2016); *State v. Keller*, 256 S.E.2d 710, 714 (N.C. 1979); *State v. O'Dell*, 543 N.E.2d 1220, 1225 (Ohio 1989); *Commonwealth v. Brown*, 52 A.3d 1139, 1165 (Pa. 2012); *State v. Pona*, 66 A.3d 454, 471 (R.I. 2013); *State v. Hicks*, 185 S.E.2d 746, 749 (S.C. 1971); *State v. Dana*, 10 A. 727, 729 (Vt. 1887); *Johnson v. Commonwealth*, 298 S.E.2d 99, 101 (Va. 1982); *State v. Harris*, 685 P.2d 584, 586-87 (Wash. 1984), *overruled in part on other grounds by State v. McKinsey*, 810 P.2d 907 (Wash. 1991); *State v. Vance*, 262 S.E.2d 423, 426 (W. Va. 1980); *Linse v. State*, 286 N.W.2d 554, 558 (Wis. 1980); *Adams v. State*, 79 P.3d 526, 530 (Wyo. 2003); *Caminetti v. United States*, 242 U.S. 470, 495 (1917); *Pueblo v. Baez Figueroa*, No. DOP2009G0092, 2012 WL 6931128, at *10 (P.R. Cir.); 8 Guam Code Ann. § 95.10 (Guam); 5 V.I. Code Ann. tit. 5, § 740 (Virgin Islands). *See also* Derek J. T. Adler, *Ex post facto limitations on*

(continued . . . )

17

and Tennessee are the only jurisdictions with a judicially-created accomplice corroboration rule. *See State v. Collier*, 411 S.W.3d 886, 894 (Tenn. 2013).[7]  And though this Court has consistently relied upon the accomplice corroboration rule since 1911,[8] we have also

( . . . continued)
 *changes in evidentiary law: Repeal of Accomplice Corroboration Requirements*, 55 Fordham L. Rev. 1191, 1205 n.81 (1987) ("Between 1973 and 1980, six United States jurisdictions withdrew their accomplice corroboration requirements.") (citing Ariz. Rev. Stat. Ann. § 13-136 (repealed 1976); Ky. R. Crim. Proc. 9.62 (abolished 1980); N.H. Rev. Stat. Ann. § 579:4 (repealed 1973); Utah Code Ann. § 77-31-18 (superseded 1979); V.I. Code Ann. tit. 14 § 17 (repealed 1978); Wyo. Stat. § 7-6-262 (repealed 1975)); George Fisher, *The Jury's Rise as Lie Detector*, 107 Yale L.J. 575, 702 n.595 (1997) (summarizing the history and trends of the accomplice corroboration rule).

[7] The remaining sixteen states have statutorily adopted their own varying forms of the rule. *McGowan v. State*, 990 So. 2d 931, 987 (Ala. Crim. App. 2003) (citing Ala. Code § 12-21-222 (1975)); *M.H. v. State*, 382 P.3d 1201, 1205 (Alaska Ct. App. 2016) (citing Alaska Stat. § 12.45.020); *MacKool v. State*, 231 S.W.3d 676, 688 (Ark. 2006) (citing Ark. Code Ann. § 16-89-111(e)(1)(A)); *People v. Whalen*, 294 P.3d 915, 959 (Cal. 2013) (citing Cal. Penal Code § 1111), *disapproved of on other grounds by People v. Romero*, 354 P.3d 983, 1014 n.17 (Cal. 2015); *Robinson v. State*, 812 S.E.2d 232, 235 (Ga. 2018) (citing Ga. Code Ann. § 24-14-8); *State v. Lankford*, 399 P.3d 804, 834 (Idaho 2017) (citing Idaho Code § 19-2117); *State v. Barnes*, 791 N.W.2d 817, 823 (Iowa 2010) (citing Iowa R. Crim. P. 2.21(3)); *State v. Horst*, 880 N.W.2d 24, 37 (Minn. 2016) (citing Minn. Stat. § 634.04); *State v. Kills on Top*, 793 P.2d 1273, 1294 (Mont. 1990) (citing Mont. Code Ann. § 46-16-213); *Evans v. State*, 944 P.2d 253, 257 (Nev. 1997) (citing Nev. Rev. Stat. § 175.291 (1967)); *People v. Davis*, 66 N.E.3d 1076, 1082 (N.Y. 2016) (citing N.Y. Crim. Proc. Law § 60.22); *State v. Reddig*, 876 N.W.2d 34, 36 (N.D. 2016) (citing N.D. Cent. Code § 29-21-14); *Postelle v. State*, 267 P.3d 114, 126 (Okla. Crim. App. 2011) (citing Okla. Stat. tit. 22, § 742); *State v. Washington*, 330 P.3d 596, 604 (Or. 2014) (citing Or. Rev. Stat. § 136.440); *State v. Dunkelberger*, 909 N.W.2d 398, 400 (S.D. 2018) (citing S.D. Codified Laws § 23A-22-8); *Smith v. State*, 436 S.W.3d 353, 369 (Tex. Crim. App. 2014) (citing Tex. Code Crim. Proc. Ann. art. 38.14).

[8] *In re Anthony W.*, 388 Md. 251, 264 (2005); *Williams v. State*, 364 Md. 160, 179 (2001); *Ayers v. State*, 335 Md. 602, 637 (1994); *Collins v. State*, 318 Md. 269, 280 (1990); *Turner v. State*, 294 Md. 640, 641-42 (1982); *Brown v. State*, 281 Md. 241, 244 (1977); *State v. Foster*, 263 Md. 388, 394 (1971); *Strong v. State*, 261 Md. 371, 377 (1971); *Veney v. State*, 251 Md. 159, 168-69 (1968); *McDowell v. State*, 231 Md. 205, 213-14 (1963); *Boggs v. State*, 228 Md. 168, 170 (1962);

(continued . . . )

recognized the rule's "limited utility." *Brown*, 281 Md. at 246. It long ago was said, and it holds true today, that "[t]he degree of credit to be given to a witness, whatever may be his character or position in a cause, should not be arbitrarily determined in advance of his testimony and in ignorance of the circumstances affecting its credibility." *State v. Litchfield*, 58 Me. 267, 270 (1870). We now recognize, as have the Supreme Court, federal courts, and the majority of state courts, that a blanket rule requiring corroboration for accomplices intrudes too far into the jury's constitutional role as factfinder and unnecessarily and arbitrarily deprives the jury of the opportunity to assess and decide the credibility of potentially highly relevant evidence.

Forty years ago, Professor Wigmore, widely considered the "foremost authority in the field of evidence," *Reed v. State*, 283 Md. 374, 403 (1978), recognized the limited utility of the accomplice corroboration rule. He observed: "We have passed beyond the stage of thought in which [an accomplice's] commission of crime, self-confessed, is deemed to render him radically a liar." VII Wigmore, Evidence, § 2057, at 417. "The extreme case of the wretch who fabricates merely for the malicious desire to drag others down in his own ruin can be no foundation for a general rule." *Id.* Professor Wigmore, quoting Chief Baron Joy, Evidence of Accomplices 4 (1844), promoted an alternative approach to the fixed, unvarying general rule: "Why not leave the credit of the accomplice to be dealt with by the jury, subject to such observations upon it from the judge as each particular case may suggest?" *Id.* § 2057, at 418. The Supreme Court has similarly

---

( . . . continued)
*Mulcahy v. State*, 221 Md. 413, 426-28 (1960); *Wright v. State*, 219 Md. at 646-47; *Nolan v. State*, 213 Md. 298, 309 (1957); *Watson v. State*, 208 Md. 210, 217 (1955).

19

suggested that the "better practice" when addressing accomplice testimony is to caution the jury "against too much reliance" upon such testimony. *Holmgren v. United States*, 217 U.S. 509, 524 (1910). This alternative approach—allowing the jury to determine the credibility of accomplice testimony following a cautionary instruction—is the rule we adopt today. Henceforth, when accomplices testify to uncorroborated facts, the issue will be the weight of the evidence, not its legal sufficiency and trial courts need only give a cautionary instruction.[9] *See United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999).

We are mindful that in abrogating the accomplice corroboration rule, which we do not do lightly, we are overturning precedent established over a century ago and maintained ever since. *See Luery*, 116 Md. at 293-94. Yet, the mere longevity of a common law rule should not necessarily dictate its preservation, particularly when reasoned analysis demonstrates the wisdom of eliminating the rule. This Court is free to, and we are convinced we should, modify the common law when "experience demonstrates that it is unrealistic or *unwise* to enforce a rule in the form [previously] expressed." *Houghton v. Forrest*, 412 Md. 578, 587 (2010) (emphasis added). We do so here. We hold that, in criminal jury trials, the courts should disturb as little as possible the jury's role of factfinder, as established under the Maryland Constitution. This deference to the jury restores the balance between the concerns underlying accomplice testimony and its potential benefits.

---

[9] Procedurally, the trial court no longer needs to determine on the front end, typically by way of a defense motion for judgment of acquittal, whether, as a matter of law, the State has provided corroborative evidence to send the case to the jury. Instead, after accomplice testimony is presented, the court only needs to issue a cautionary jury instruction. Once that instruction is issued, the weight and credibility of the accomplice testimony is left entirely to the jury to decide.

C. *Application of the New Rule in the Present Case?*

Having abrogated the extant accomplice corroboration rule and replaced it with the modified common law rule, we are now left to decide whether the new rule should apply to Respondent. For the reasons discussed below, it should not.

Generally, judicially-initiated changes to the common law apply prospectively, that is, they apply in the case before us and all similar cases moving forward. *Remes v. Montgomery County*, 387 Md. 52, 77 (2005); *see also Boblitz v. Boblitz*, 296 Md. 242, 275 (1983). We have long recognized, however, that this general rule applies primarily in civil cases and not criminal cases, as its application in criminal cases "may . . . impinge upon basic fairness."[10] *Lewis v. State*, 285 Md. 705, 713 (1979); *see also Williams v. State*, 292 Md. 201, 217 (1981) (stating that "*particularly in criminal cases*, changes in the common law ordinarily should have only prospective effect when considerations of fairness are present" (emphasis added)). Accordingly, in several criminal cases, we have applied a common law change solely prospectively—i.e., we applied the new rule exclusively in similar future cases but not in the case before us.[11] *See, e.g.*, *State v. Hawkins*, 326 Md. 270, 295 (1992); *Jones v. State*, 302 Md. 153, 161 (1985), *abrogated on other grounds*

---

[10] Even in civil cases, there are instances in which the "interest[s] of justice" dictate that a common law change should be given "only prospective effect." *Julian v. Christopher*, 320 Md. 1, 10 (1990) ("Contracts are drafted based on what the law is; to upset such transactions even for the purpose of improving the law could be grossly unfair. Overruling prospectively is particularly appropriate when we are dealing with decisions involving contract law.").

[11] This is not to say that common law changes can never apply in the criminal case that triggers the rule change. There may well be criminal cases in which applying such changes would be appropriate. We merely state here that before doing so, this Court will carefully consider whether applying the new rule would be fair given the facts before us.

21

*by Surland v. State*, 392 Md. 17, 32-36 (2006); *Williams*, 292 Md. at 220; *Lewis*, 285 Md. at 713.

Principles of fairness dictate that we apply the rule adopted herein not to the case before us, but rather solely prospectively. Our decision is guided by *Carmell v. Texas*, 529 U.S. 513 (2000). There, the Supreme Court addressed whether the retroactive application of a Texas statute repealing a corroboration requirement in certain sexual assault cases violated the *Ex Post Facto* Clause. *Id.* at 516. Under the amended statute, a "victim's testimony alone," *id.*, could support a conviction if the victim was under 18 (the prior rule required corroboration of the victim's testimony if the victim was over 14), *id.* at 519. The Court refused to apply the new rule to the case before it, explaining that doing so was "grossly unfair" because it lowered "the quantum of evidence required to [secure a] convict[ion][.]" *Id.* at 532, 544-47.

While the Court's analysis was grounded in the *Ex Post Facto* Clause, which does not apply to judicially-initiated changes to the common law, *see Rogers v. Tennessee*, 532 U.S. 451, 460 (2001), the general principles enunciated there apply here. Under the new rule we adopt in this opinion, the State in future cases can attempt to secure a conviction with uncorroborated accomplice testimony. Were we to apply the new rule to the case at bar, we would in effect be holding that a conviction can be sustained based on what was at the time of trial legally insufficient evidence. Doing so would be to Respondent's detriment, and ultimately unfair, because it would allow the State in this case to satisfy an evidentiary hurdle on appeal that it could not at trial. *See Carmell*, 529 U.S. at 530 ("Requiring only the victim's testimony to convict, rather than the victim's testimony plus

22

other corroborating evidence is surely 'less testimony required to convict' in any straightforward sense of those words.").

Applying the new rule here would also be unfair to Respondent for another reason. We safely can assume that counsel prepared Respondent's defense in reliance on the then-applicable accomplice corroboration rule. At trial, the defense focused exclusively on the lack of independent evidence corroborating the accomplices' testimony. Had defense counsel known then that the rule might change post hoc, a different course, including the possibility of a plea bargain, likely would have been charted. In short, to apply the new rule here would impose upon Respondent a twofold blow by (1) easing, after the fact, the quantum of evidence the State was required to present to secure a conviction while simultaneously (2) stripping Respondent of his only defense. Such action would "impinge upon [the] basic [principles of] fairness" that we are tasked with protecting. *Lewis*, 285 Md. at 713; *see also Carmell*, 529 U.S. at 546 (stating that "elements of unfairness and injustice" are "directly implicated by [retrospective application of] rules lowering the quantum of evidence required to convict . . . because they always make it easier to convict the accused"). We therefore apply the extant accomplice corroboration rule to Respondent's case, and, as discussed above, affirm the judgment of the Court of Special Appeals overturning his conviction.

Judge McDonald, in his dissent, argues that we should apply the rule adopted today to Respondent's case. *State v. Jones*, No. 52, Sept. 2018 Term, slip op. at 1 (McDonald, J., concurring in part and dissenting in part). He proffers two primary arguments to support his position, both of which we reject.

23

Judge McDonald first posits that the accomplice corroboration requirement is "essentially a rule of evidence." *Id.* at 2. As he sees it, the rule "excludes certain evidence – *i.e.*, accomplice-derived evidence – from consideration. It is similar to a rule that excludes evidence from consideration if a foundation is not laid or if a constitutional or statutory right is violated." *Id.* at 4; *see also Carmell*, 529 U.S. at 556 (Ginsburg, J., dissenting) (stating that a corroboration requirement is a "rule of evidence" that seeks "to rein in the admissibility of testimony [that] has [been] deemed insufficiently credible standing alone"). To Judge McDonald, applying a modified rule of evidence in this case is not unfair. *See Jones*, slip op. at 4-6 (McDonald, J., concurring in part and dissenting in part).

Judge McDonald's stance overlooks our explicit rejection of the notion that the accomplice corroboration rule is merely a rule of evidence that ultimately has no bearing on the sufficiency of evidence to sustain a conviction. *See Turner*, 294 Md. at 646 ("The problem with the State's analysis is that it *confuses the admissibility of evidence with its sufficiency to serve as corroboration*. Irrespective of whether [evidence] . . . is . . . admissible substantively . . . there must be corroboration of an accomplice's testimony in order to constitute sufficient evidence to sustain a conviction." (emphasis added)). To classify our holding as a mere change to a rule of evidence is to ignore the holding's true effects. We have not simply modified how accomplice testimony is to be admitted or under what circumstances it is to be deemed competent. *See Carmell*, 529 U.S. at 546-47 (contrasting rules of evidence with sufficiency of the evidence rules, stating, "[p]rosecutors may satisfy all the requirements of any number of witness competency rules, but this says

24

absolutely nothing about whether they have introduced a quantum of evidence sufficient to convict the offender").

By no longer requiring independent corroboration of accomplice testimony, we today have changed the equation regarding "whether properly admitted evidence is sufficient to convict the defendant." *Id.* at 546. Borrowing the words of the *Carmell* Court, we have articulated a new rule that "inform[s] us whether the evidence introduced is sufficient to convict as a matter of law (which is not to say the jury *must* convict, but only that, as a matter of law, the case may be submitted to the jury and the jury may convict)." *Id.* at 547 (emphasis in original). When Respondent was tried, the prevailing law required an additional step before accomplice testimony could be submitted to the jury—judicial confirmation that independent evidence corroborating the accomplice testimony existed. By removing that step, we have lowered the quantum of evidence required to convict. *Id.* at 530 ("Under the law in effect at the time . . . the prosecution's case was legally insufficient . . . The amended law, however, changed the quantum of evidence necessary to sustain a conviction; under the new law, petitioner could be . . . convicted on the victim's testimony alone, without any corroborating evidence."). Applying that lower "quantum of evidence" to Respondent's case now would be "grossly unfair." *Id.* at 532 ("A law reducing the quantum of evidence required to convict an offender is as grossly unfair as, say, retrospectively eliminating an element of the offense, increasing the punishment for an existing offense, or lowering the burden of proof[.]").

Despite acknowledging that considerations of fairness are "an appropriate concern" when, as here, a new common law rule is adopted on appeal in a criminal case, *Jones*, slip

25

op. at 4 (McDonald, J., concurring in part and dissenting in part), Judge McDonald next suggests that the proper remedy for any unfairness to Respondent should be a new trial, not an acquittal, *id.* at 6.[12] The problem with this proposition is that it would still result in the unfairness we have highlighted. Whether we apply the new rule now or a trial court applies it during a new trial, Respondent would still be prejudiced by (1) the State's diminished burden of not having to present independent corroborative evidence of the accomplices' testimony and (2) the absence of his sole defense to the conspiracy charge. Changing the actor who imposes the unfairness, as Judge McDonald suggests, does not convert an unfair result into one that is fair. In sum, we see no good reason to depart from our long-standing precedent of applying common law changes in criminal cases solely prospectively when those changes benefit the State. *See Jupiter v. State*, 328 Md. 635, 652 (1992) (Eldridge, J., dissenting) ("In the past[,] where this Court has changed the common law applicable to criminal cases so as to benefit the prosecution, we have made the changes entirely prospective, and not even applicable to the case before the Court" (citations omitted)); *see also Owens-Illinois, Inc., v. Zenobia*, 325 Md. 420, 470 (1992) ("Where . .

---

[12] Judge McDonald also questions whether Respondent would actually suffer prejudice were we to apply the new rule here because he received a fair trial and the jury was adequately warned about the "potential unreliability of accomplice testimony." *Jones*, No. 52, Sept. 2018 Term, slip op. at 4-5 (McDonald, J., concurring in part and dissenting in part). But general considerations of fairness, as pronounced in *Lewis* and *Williams*, do not pertain exclusively to what occurred at trial. Such considerations attend the entire judicial process, including appeal. Thus, while Respondent's trial may have been fair and the jury instructions adequate, applying a lower and outcome determinative sufficiency of the evidence rule at this juncture would "impinge upon basic fairness." *Lewis*, 285 Md. at 713.

26

. a change in common law . . . relates to requirements at trial, we have held that the change applies" only in cases commencing "after the date of our opinion in the present case.").

As for the future application of the new rule, we hold that the rule will apply entirely prospectively to all trials "commencing with the date of our mandate in the instant case[.]" *Lewis*, 285 Md. at 716.

D. *Cautionary Instruction*.

Currently, the Maryland State Bar Association's Criminal Pattern Jury Instruction 3:11A covers the accomplice corroboration rule and provides:

> You have heard testimony from (name), who was an accomplice. An accomplice is one who knowingly and voluntarily cooperated with, aided, advised, or encouraged another person in the commission of a crime. The defendant cannot be convicted solely on the uncorroborated testimony of an accomplice.
> You must first decide whether the testimony of (name) was corroborated before you may consider it. Only slight corroboration is required. This means there must be some evidence, which you believe, in addition to the testimony of (name), that shows either (1) that the defendant committed the crime charged, or (2) that the defendant was with others who committed the crime, at or about the time and place the crime was committed.
> If you find that the testimony of (name) has been corroborated, you may consider it, but you should do so with caution and give it the weight you believe it deserves. If you do not find that the testimony of (name) has been corroborated, you must disregard it and may not consider it as evidence against the defendant.

This pattern instruction, of course, will need to be modified. The Court of Special Appeals provided a few helpful examples of cautionary instructions from our sister states, which we have appended to this opinion. *See Jones*, slip op. at 23-25 n.17.[13]

---

[13] Lastly, we commend and thank the Court of Special Appeals for the extensive research displayed in its unreported opinion, upon which we heavily relied.

27

# III.

## Conclusion

For the reasons stated earlier in this opinion, we hold that the testimony of Respondent's alleged accomplices was not corroborated by independent evidence and therefore did not suffice to sustain Respondent's conviction of conspiracy to commit armed carjacking. Accordingly, we affirm the judgment of the Court of Special Appeals overturning that conviction.

In addition, we abrogate the current form of the accomplice corroboration rule and join the majority of courts across the country, including the federal courts, that require a cautionary instruction when the State introduces accomplice testimony, allowing the jury to assess the credibility of accomplices for itself. This new rule is to be applied to all trials commencing with the date of our mandate.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

28

## APPENDIX

**Colorado**:

> The prosecution has presented a witness who claims to have been a participant with the defendant in the crime charged. There is no evidence other than the testimony of this witness which tends to establish the participation of the defendant in the crime.

> While you may convict upon this testimony alone, you should act upon it with great caution. Give it careful examination in the light of other evidence in the case. You are not to convict upon this testimony alone, unless you are convinced beyond a reasonable doubt that it is true.

Model Criminal Jury Instructions Committee of the Colorado Supreme Court, *Colorado Jury Instructions—Criminal*, D:05 (2017) (excerpt).

**Connecticut**:

> In weighing the testimony of an accomplice, who is a self-confessed criminal, you must consider that fact. All else being equal, it may be that you would not believe a person who has committed a crime such as this, involving moral wrong, as readily as you would believe a person of good character. The amount of moral wrong involved in the participation of the witness in the crime should be weighed. Also, in weighing the testimony of an accomplice who has not yet been sentenced or whose case has not yet been disposed of, or who has not been charged with offenses of which the state has evidence, you should keep in mind that he may, in his own mind, be looking for or hoping for some favorable treatment in the sentence or disposition of his own case, and that, therefore, he may have such an interest in the outcome of this case that his testimony may have been colored by that fact. Therefore, the jury must look with particular care at the testimony of an accomplice and scrutinize it very carefully before you accept it.

> On the other hand, there are many offenses that are of such a character that the only persons capable of giving useful testimony are those who are themselves implicated in the crime. Each accomplice's testimony is an admission by him against his own natural interest in not incriminating himself; and, therefore, it may itself be evidence of his testimony's reliability.

> It is for you, the jury, to decide what credibility you will give to a witness who has admitted his involvement in criminal wrongdoing—whether you will believe or disbelieve the testimony of a person who, by his own

admission, has committed the crime(s) charged by the state here. Like all other questions of credibility, this is a question you must decide based on all the evidence presented to you.

Connecticut Judicial Branch, *Criminal Jury Instructions*, § 3.10 (4th ed. 2017).

**Michigan**:

(1) You should examine an accomplice's testimony closely and be very careful about accepting it.

(2) You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

(3) When you decide whether you believe an accomplice, consider the following:

> (a) Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

> (b) Has the accomplice been offered a reward or been promised anything that might lead [him/her] to give false testimony? [State what the evidence has shown. Enumerate or define reward.]

> (c) Has the accomplice been promised that [he/she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his/her] testimony?

> [(d) Does the accomplice have a criminal record?]

(4) In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.

The Michigan Supreme Court Committee on Model Criminal Jury Instructions,

*Michigan Model Criminal Jury Instructions*, 5.6 (1991) (excerpt).

30

Circuit Court for Baltimore County
Case No. 03-K-15-005488
Argued: January 31, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 52

September Term, 2018

_____

STATE OF MARYLAND

v.

HASSAN EMMANUEL JONES

_____

Barbera, C.J.,
*Greene
McDonald
Watts
Hotten
Getty
Wilner, Alan M., (Senior Judge,
Specially Assigned)

JJ.

_____

Concurring and Dissenting Opinion
by McDonald, J.

_____

Filed: August 28, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

The Majority Opinion is well-written and well-reasoned. I agree that the common law accomplice corroboration requirement is outmoded and arbitrary in its effect and should be discarded. My disagreement concerns the Majority Opinion's reluctance to apply its conclusions to the case before us. As the Majority Opinion explains, when this Court effects a change to the common law, it generally does so prospectively in a way that includes application to the case that raised the issue. We should do so in this case.

*Accomplice Corroboration in this Case*

Before it tackles the history and merits of the common law accomplice corroboration requirement, the Majority Opinion analyzes the evidence at trial in light of the existing accomplice corroboration requirement. Majority slip op. at 6-13. It concludes, as the Court of Special Appeals did, that the required "slight corroboration" was lacking. That analysis is compelling.[1] But the analysis by Judge Watts that comes to a contrary conclusion is equally compelling. This is a very close question.

For me, it demonstrates the arbitrary nature of the accomplice corroboration rule, as the Majority Opinion explains so well. Majority slip op. at 13-20. A "slight" bit of independent evidence, depending on how one weighs it, means that testimony and other evidence derived from an accomplice (or, as in this case, multiple accomplices) is available for the factfinder to rely upon – or wholly excluded from the factfinder's consideration,

---

[1] This is a tough climb for an appellate court. In essence, an appellate court is concluding, not that the trial court got the law wrong, but that the jury got the facts wrong when, presumably following the trial court's correct instructions, it found that there was at least "slight corroboration" of the accomplice testimony before it considered that testimony.

without any consideration of how detailed, specific, and credible the accomplice-derived evidence is or how much (as in the instant case) it is corroborated by other participants in the crime.

Luckily, I need not choose between the two competing analyses of the alleged corroborative evidence in this case.  In my view, the holding of the Majority Opinion concerning the merits of the accomplice corroboration requirement should be applied to the case before us, which eliminates any need to decide whether to reject the jury's assessment of the corroboration at Mr. Jones' trial.

*The Nature of the Accomplice Corroboration Requirement*

The accomplice corroboration requirement is essentially a rule of evidence.  *Cf. Carmell v. Texas,* 529 U.S. 513, 556-57 (2000) (Ginsburg, J., dissenting) (statutory corroboration requirement for testimony of alleged victim of sexual assault is essentially a "rule of evidence" like an accomplice corroboration requirement).  It is not a statute, but a common law doctrine that does not relate to the definition of any particular offense or the burden of proof.  Changing it through adjudication does not implicate the Ex Post Facto Clause of the Federal Constitution or its State Constitution analog.[2]  *See Rogers v. Tennessee*, 532 U.S. 451 (2001) (judicial abrogation of common law rule relating to criminal offense not limited by Ex Post Facto Clause).

---

[2] *See* United States Constitution, Article I, §9 ("No … ex post facto Law shall be passed"); Maryland Declaration of Rights, Article 17 (prohibiting "retrospective laws, punishing acts before the existence of such Laws").

The Majority Opinion argues against treating the accomplice corroboration requirement as an evidentiary rule. It twice quotes *Turner v. State,* 294 Md. 640, 646 (1982) to suggest that to do so "confuses the admissibility of evidence with its sufficiency." Majority slip op. at 7, 24. However, in making that statement in *Turner,* the Court was contrasting the issue of the admissibility of the alleged independent *corroborative evidence* with its sufficiency as slight corroboration, not the admissibility of the *accomplice-derived evidence*. The Court concluded the quoted passage with the observation that "[t]he question is not the reliability of the [hearsay] statement [for purposes of admissibility] but its sufficiency as corroboration and for this reason the State's argument cannot stand." 294 Md. at 646. The Court determined that the corroborative evidence proffered by the State did not satisfy the standard of slight corroboration and, as a result, reversed the defendant's conviction. The Court was not dealing with the question of whether a decision to dispense with a corroboration requirement should apply in the case in which that decision is made.

The Majority Opinion also argues that elimination of the accomplice corroboration requirement "lower[s] the quantum of evidence" needed for a conviction. I realize that the phrase "quantum of evidence" derives from a Supreme Court case,[3] but it is hard to get a handle on what this "quantum" is. It sounds like something that pertains to the weight of evidence necessary to convict, but clearly it does not. The accomplice corroboration requirement does not affect the elements that must be proven for any particular offense or

---

[3] *Carmell v. Texas,* 529 U.S. 513 (2000).

3

the burden of proof – beyond a reasonable doubt – in a criminal case.  Nor does it affect the weight to be given to accomplice-derived evidence.

Rather, the accomplice corroboration requirement is essentially a rule that excludes certain evidence – *i.e*., accomplice-derived evidence – from consideration.  It is similar to a rule that excludes evidence from consideration if a foundation is not laid or if a constitutional or statutory right is violated.  But unlike the familiar exclusionary rule applied by courts to discipline violations of the Fourth Amendment by law enforcement, the accomplice corroboration rule was never intended to vindicate an important constitutional right.  As the Majority Opinion explains, it apparently grew out of a judicial distrust of the ability of jurors to assess the credibility of witnesses.

The Majority Opinion explains, more eloquently than this opinion, why this common law requirement should be abandoned.  Changes effected in the common law through adjudication are typically applied in the case being adjudicated.  However, the Majority Opinion declines to apply its analysis in this case out of general considerations of fairness.  That is an appropriate concern in an appeal of a criminal conviction.  Even taking those considerations into account, I would reach a different result.

*The Fairness of Mr. Jones' Trial*

There is no contention before us that Mr. Jones did not receive a fair trial before an impartial tribunal, in compliance with a defendant's rights under the federal Constitution, the State Constitution, applicable statutes, and the Maryland Rules.  Moreover, not only was the jury in this case told by both the court and counsel to look for independent corroboration before it considered the testimony of the accomplice witnesses, the trial court

4

warned the jury about the potential unreliability of accomplice testimony with the sort of language that the Majority Opinion endorses for the future. The trial court instructed the jury in the following words:

> You are the sole judge of whether a witness should be believed. … In deciding whether a witness should be believed … you should consider such factors as … *whether the witness had a motive not to tell the truth*; … whether the witness had an interest in the outcome of the case; … whether the witness's testimony was consistent; … and *whether the witness has a bias or a prejudice*.

> You have heard the testimony of Christian Tyson, Kareem Riley, and Ramart Wilson who were accomplices….[If you find that the testimony of Christian Tyson, Kareem Riley and Ramart Wilson has been corroborated,] *you may consider it but you should do so with caution and give it the weight it deserves*….

> \*           \*           \*

> You have heard evidence that Christian Tyson, Kareem Riley and Ramart Wilson have pleaded guilty to a crime arising out of the same events for which the defendant is now on trial. …

> You may consider the testimony of a witness who testifies for the State as a result of a plea agreement. However, *you should consider such testimony with caution because the testimony may have been influenced by a desire to gain a benefit by testifying against the Defendant*.

> \*           \*           \*

> You have heard evidence that Christian Tyson, Kareem Riley and Ramart Wilson have been convicted of a crime. *You may consider this evidence in deciding whether the witness is telling the truth* but cannot consider this evidence for any other purpose.

Record Extract at 669-74 (emphasis added). The instructions that the jury received in this case incorporated the same warnings that courts in jurisdictions that do not require

5

corroboration of accomplice testimony also give with greater or lesser elaboration. Defense counsel emphasized the court's cautionary instructions in his closing argument. *Id*. at 706-30.

The only real possibility of unfairness that the Majority Opinion suggests is that Mr. Jones' defense counsel might have presented a different defense or that Mr. Jones might have pled guilty if he was aware that the accomplice corroboration requirement would be abrogated on appeal. Majority slip op. at 23. That, of course, is speculation.[4] However, to the extent that it is a real concern, the remedy should be to grant the relief that Mr. Jones himself requested for the alleged deficiency in corroborative evidence – a new trial[5] – rather than the windfall of an acquittal in the face of a jury verdict beyond a reasonable doubt that he was involved in this offense.

*Conclusion*

In sum, I agree with the Majority Opinion that the common law accomplice corroboration requirement should be eliminated. In my view, the Majority Opinion's holding concerning that evidentiary rule should be applied to the case before us, as we usually do for changes in the common law. To the extent that there is a concern that Mr.

---

[4] The Majority Opinion characterizes the accomplice corroboration requirement as Mr. Jones' "sole defense" at trial. Majority slip op. at 26. This is not quite accurate. A major (if not *the* major) theme of the defense was to attack the credibility of the other participants in the crime who testified that Jones also was a participant – which would have been a major theme of the defense even in the absence of an accomplice corroboration requirement.

[5] Following the trial, Mr. Jones filed a motion for a new trial on the ground that there was insufficient evidence of corroboration of the accomplice testimony at the trial. That motion was denied at his sentencing.

Jones might have presented a different defense at trial, that can be addressed by granting his post-trial motion for a new trial.

Circuit Court for Baltimore County
Case No. 03-K-15-005488
Argued: January 31, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 52

September Term, 2018

———————————————————————

STATE OF MARYLAND

v.

HASSAN EMMANUEL JONES

———————————————————————

Barbera, C.J.,
*Greene
McDonald
Watts
Hotten
Getty
Wilner, Alan M. (Senior Judge,
Specially Assigned),

JJ.

———————————————————————

Concurring and Dissenting Opinion by Watts, J.

———————————————————————

Filed: August 28, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Md. Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

I fully agree with the Majority's abrogation of the existing accomplice corroboration rule. See Maj. Slip Op. at 1, 20-21. The existing rule is antiquated and does not permit the trier of fact, whether jury or judge, to consider the credibility of accomplice testimony absent independent corroboration. From my perspective, adherence to the existing rule would lead to unwarranted results, such as the one reached by the Majority in this case—the reversal of a conviction for insufficient evidence of corroboration of accomplice testimony.

I disagree with the Majority's conclusion that, under the existing accomplice corroboration rule, the evidence was insufficient to permit the testimony of three accomplices—Ramart Wilson, Christian Tyson, and Kareem Riley—concerning the involvement of Hassan Emmanuel Jones, Respondent, in the armed carjacking and murder to go to the jury. The Majority and the Court of Special Appeals were wrong to determine that Jones's false statements to law enforcement officers were insufficient independent corroboration of the accomplice testimony. Without repeating the details of all of the facts of the case, the accomplice evidence boiled down to three people, *i.e.*, accomplices—Wilson, Tyson, and Riley—testifying that Jones participated in ordering Sandeep Bhulai out of his car at gunpoint and then, along with the others, shooting Bhulai to death. In other words, the evidence demonstrated that Jones took part at least in conspiracy to commit armed carjacking. During an interview, Jones told law enforcement officers that he did not know the others and that he must have been sleeping at the time of the crime. Law enforcement officers determined that Jones's cell phone contained contact information for the accomplices, proving that he lied about not knowing the others; and

Jones had received no information from law enforcement officers about the late-night timing or date of the crime when he advised that he had been sleeping, proving that he had knowledge of the time and date that the crime was committed.

A valid inference to be drawn from Jones's statements to law enforcement officers is that he lied about knowing Wilson, Tyson, and Riley because he was with them participating in the crime, and that he attempted to create a false alibi by alleging that he was asleep at the time. Admittedly, as determined by the Majority, there are also inferences that are consistent with innocence that may be gathered from Jones's false statements. See Maj. Slip Op. at 10-11.[1] But, our case law is clear—where there are multiple inferences to be drawn from circumstantial evidence, such evidence is sufficient to go to the jury for its determination on the matter, as long as the jury would not be called upon to engage in mere speculation. In Brown v. State, 281 Md. 241, 246, 244, 378 A.2d 1104, 1108, 1107 (1977), a case in which this Court upheld the accomplice corroboration rule and declined to

---

[1]In assessing the sufficiency of the evidence, the Majority does not provide independent analysis, but rather relies upon the Court of Special Appeals's assessment of the evidence. See Maj. Slip Op. at 10-11. According to the Court of Special Appeals, one reason that Jones's false statements to law enforcement officers provided insufficient corroboration of the accomplice testimony was that the statements did not satisfy the requirements for demonstrating consciousness of guilt. The Court of Special Appeals meticulously reviewed the sequential inferences necessary under case law to establish consciousness of guilt, and concluded that Jones's false statements did not meet the standard. It is well settled that corroboration of accomplice testimony requires only "slight corroboration[.]" Turner v. State, 294 Md. 640, 642, 452 A.2d 416, 417 (1982); see also Ayers v. State, 335 Md. 602, 638, 645 A.2d 22, 39 (1994) ("Notwithstanding the important reasons behind the [accomplice corroboration] rule, we have explained that only slight corroboration is required." (Citations omitted)). Reference to the consciousness of guilt standard is a red herring. Adherence to that standard is not required under the existing accomplice corroboration rule.

abrogate it, we explained:

> Not much in the way of evidence corroborative of the accomplice's testimony has been required by our cases. We have, however, consistently held the view that while the corroborative evidence need not be sufficient in itself to convict, it must relate to material facts tending either (1) to identify the accused with the perpetrators of the crime or (2) to show the participation of the accused in the crime itself. If with some degree of cogency the corroborative evidence tends to establish either of these matters, the trier of fact may credit the accomplice's testimony even with respect to matters as to which no corroboration was adduced. That corroboration need not extend to every detail and indeed may even be circumstantial is also settled by our cases.

(Citations omitted).

In In re Anthony W., 388 Md. 251, 255, 278, 879 A.2d 717, 719, 732-33 (2005), in which this Court held that the accomplice corroboration rule applies in juvenile cases, addressing evidence that is subject to differing inferences, we concluded:

> Where the trial [court] has ruled that the witness is an accomplice as a matter of law, for the appellate court to reverse that decision, the proof must be so clear and decisive that reasonable minds could not differ in coming to the same conclusion.
>
> The State argues, and we agree, that the evidence respecting whether [two individuals] were accomplices is capable of being determined either way. While we may agree with the Court of Special Appeals that there was sufficient evidence to determine that [the two individuals] were, in fact, accomplices to the delinquent act charged, the evidence does not demand or require that an appellate court make such a finding. In addition, we have held repeatedly that when evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact[.] Therefore, the clearly erroneous standard of review is appropriate for this question.

(Cleaned up). Applying the clearly erroneous standard in that case, we held that the juvenile court "was not clearly erroneous in finding that [the two individuals] were not

- 3 -

accomplices and in relying on their uncorroborated testimony to determine Anthony W.'s

involvement[,]" explaining:

> Analyzing the evidence and testimony in the record, a rational trier of fact could have found that [the two individuals] were not accomplices. In the absence of a statement relating to why the judgment of the juvenile court was clearly erroneous, the Court of Special Appeals erred by not deferring to the juvenile court[]'s factual findings.

Id. at 280, 879 A.2d at 734.

More recently, in Silva v. State, 422 Md. 17, 29, 28 A.3d 1226, 1233-34 (2011),

another case involving the accomplice corroboration rule, we stated:

> We have recognized that, for a [trial court] to take the question of complicity from the jury and make a finding as a matter of law, "the proof must be so clear and decisive that reasonable minds could not differ in coming to the same conclusion." *See In re Anthony W.*, 388 Md. 251, 278, 879 A.2d 717, 732 (2005) (citing *Bishop v. State*, 39 Md. App. 384, 390, 385 A.2d 1206, 1210 (1978) (stating that "the court must find, in effect, that the testimony was so conclusive that, were a directed verdict of guilty available in a criminal trial, and had the witness been the party charged with the crime, it would have been the witness's fate to have such entered against him [or her]")). When, however, "'evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions.'" [*State v.*] *Foster*, 263 Md. [388,] 394, 283 A.2d [411,] 413-14 [(1971)] (citations omitted).

In this case, the jury was properly permitted to determine whether Jones lied to law

enforcement officers because he was with the others participating in the crime or whether

he lied, as the Court of Special Appeals suggests, for innocent reasons, such as the

possibility that he knew the others were in trouble and that he did not want to be associated

with them.[2] That Jones lied about knowing Wilson, Tyson, and Riley when he clearly did, and that he offered that he must have been asleep at the time of the crime without having been told the date or time of the crime, elevated Jones's statements to the slight independent corroboration necessary for the accomplices' testimony to be considered by the jury. Simply put, that there were different inferences that could have been drawn from Jones's statement did not render the statement insufficient corroboration of accomplice testimony. Submission of Jones's testimony to the jury for evaluation of the evidence was fully supported by our case law.

---

[2]Making the inference that Jones lied because he was participating in the crime was not mere speculation given all of the other evidence in the case and the type of lies Jones told. Consistent with the accomplice testimony about the circumstances of the crime, a .22 caliber bullet was removed from Bhulai's head during an autopsy, a scooter was found abandoned by law enforcement officers near Bhulai's car, and Bhulai's cell phone was recovered from the residence of another person who the accomplices identified as having participated in the crime. Jones's false statements were not inconsequential. He lied about knowing the very people who testified that they were responsible for the crime and implicated him. And, Jones suggested a false alibi. Given the nature of the evidence and Jones's lies, it would not have been speculation for the jury to determine that Jones lied because he was, indeed, involved in the crime.

Despite acknowledging that circumstantial evidence is sufficient to establish the corroboration necessary for accomplice testimony to go to the jury, in this case, the Majority seems to require direct evidence placing the defendant at the scene of the crime or in close association with the accomplices. For example, the Majority states: "Neither fact places Respondent at the scene of the crime or with the perpetrators of the crime near its commission. Neither fact connects Respondent to the commission of the crime at all, unless one reads facts into the record (e.g., Respondent did not simply know the accomplices, but rather was closely associated with them)[.]" Maj. Slip Op. at 12 n.4. The Majority seeks to forbid the jury from making reasonable inferences suggested by Jones's lies and all of the other evidence in the case. Mere speculation would be that Jones lied simply because he did not want to be linked to the accomplices. Jones's false statements as to his knowledge of the accomplices and the time and date the crime occurred connect Jones to the crime.

I would reverse the Court of Special Appeals's judgment and remand to that Court with instruction to affirm Jones's conviction for conspiracy to commit armed carjacking. I agree with abrogation of the existing accomplice corroboration rule because the Majority is correct that "the mere longevity of a common law rule should not necessarily dictate its preservation," Maj. Slip Op. at 20, and adoption of the new rule will eliminate issues such as those posed by the evidence in this case.[3]

For the above reasons, respectfully, I concur and dissent.

---

[3] I also agree with Judge McDonald's determination that the holding of the majority opinion concerning abrogating the accomplice corroboration rule should apply in this case. See Concurring and Dissenting Slip Op. at 2 (McDonald, J., concurring and dissenting). In other words, I am convinced that application of the new rule to Jones's case is not precluded and that reversal of the Court of Special Appeals's judgment on that ground is warranted.

Circuit Court for Baltimore County
Case No. 03-K-15-005488
Argued: January 31, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 52

September Term, 2018

_____

STATE OF MARYLAND

v.

HASSAN EMMANUEL JONES

_____

Barbera, C.J.,
*Greene,
McDonald,
Watts,
Hotten,
Getty,
Wilner, Alan M.
(Senior Judge, Specially Assigned)

JJ.

_____

Concurring and Dissenting Opinion by Hotten,
J., which Greene, J., joins.

_____

Filed: August 28, 2019

*Greene, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being recalled
pursuant to the MD. Constitution, Article IV,
Section 3A, he also participated in the decision
and adoption of this opinion.

Respectfully, we dissent with the Majority on the second question, but concur regarding the Majority's conclusion as to the first question. As such, our focus will be limited.

The second issue invites this Court to consider whether the accomplice corroboration rule ("Rule") should be abrogated. In sum, the Majority states the following with respect to the Rule: (i) the possible unreliability of accomplices may be rectified by abrogating the Rule and placing a mandatory jury instruction in its place; (ii) the Rule is "arbitrary;" and (iii) the Rule intrudes upon the jury's role as fact-finder. We respectfully disagree with these contentions and address each of them in turn. We first provide a review of the principle of *stare decisis* and a brief history of the Rule.

*(i)    Stare Decisis*

Absent unusual circumstances, *stare decisis* is a key feature of this Court's jurisprudence that ensures the reliability of our judicial system, and it therefore must be employed. *See Conover v. Conover*, 450 Md. 51, 64, 146 A.3d 433, 440 (2016) (noting that "[*stare decisis*] is the bedrock of our legal system because it . . . fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.") (internal citations and quotations omitted). The importance of *stare decisis* mandates that we only ignore past precedent in "extremely narrow circumstances[.]" *Wallace v. State*, 452 Md. 558, 582, 158 A.3d 521, 535 (2017).

Ordinarily this Court may strike down a decision that is, "clearly wrong and contrary to established principles [ ]"[1], *Thompson v. UBS Fin. Servs., Inc.*, 443 Md. 47, 58, 115 A.3d 125, 131, n.5 (2015) (internal citations omitted), or break from precedent when there is a showing that such precedent "has been superseded by significant changes in the law or facts." *DRD Pool Serv, Inc. v. Freed*, 416 Md. 46, 64, 5 A.3d 45, 56 (2010). Such changes may occur, when, for example, "we find, in light of changed conditions or increased knowledge, that [a] rule has become unsound in the circumstances of modern life, a vestige of the past, [or is] no longer suitable to our people." *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 704, 69 A.3d 1149, 1163 (2013) (internal citations omitted). Turning to the present case, neither of the enumerated bases for breaking from precedent apply to the facts or law before us. The history of the accomplice corroboration rule, provided *infra,* persuades us that the Rule remains just as relevant today.

*(ii)    History*

The accomplice corroboration rule is a minority approach established by this Court in 1911. *Luery v. State*, 116 Md. 284, 81 A. 681 (1911). Even prior to 1911, however, courts across this country recognized fundamental problems with accomplice testimony, and looked upon such testimony with great suspicion and caution. "[C]oncerns regarding accomplice testimony have existed since at least the 1600s." *Slip op.* at 13 (citing VII John H. Wigmore, Wigmore on Evidence: Evidence in Trials at Common Law, § 2056 at 405

---

[1] Neither prior to nor following the establishment of this doctrine has this Court affirmatively identified any basis to conclude that the imposition of the Rule is improper. Not once—until now—have we acquiesced to a disposal of this important rule. Yet today, that is precisely what the Majority has done.

2

(Chadbourn rev. 1978)). Case law from the 1800s reveals that courts sought to inform jurors of the inherent unreliability of accomplice testimony through instructions. For example, an 1878 case from the Massachusetts Supreme Court documented the history behind accomplice testimony and noted several jurists' perspectives on the matter:

> [I]t is proper for the judge in such a case to advise the jury that it is safer to require confirmation of the testimony of the accomplice. . . and not to act upon his evidence alone. . . . [Another jurist] said: "My practice has always been to direct the jury not to convict unless the evidence of the accomplice be confirmed, not only as to the circumstances of the crime, but also as to the identity of the prisoner."

*Commonwealth v. Holmes,* 127 Mass. 424, 432-33 (1878). Another case, from the Supreme Court of Illinois in 1892, elaborated upon the inherent problems with accomplice testimony, providing that:

> It has often been questioned in England and in this country, be courts of the highest respectability, whether convictions on such [accomplice] testimony alone should be allowed to stand. . . . [T]he authorities agree, and common sense teaches, that such evidence is liable to grave suspicion, and should be acted upon with the utmost caution; for otherwise the life or liberty of the best citizen might be taken away on the accusation of the real criminal, made either to shield himself from punishment or to gratify his malice. And thus it is said . . . [a]ccomplices, upon their own confession, stand contaminated with guilt. They admit a participation in the very crime which they endeavor by there evidence to fix upon other persons. They are sometimes entitled to earn a reward upon obtaining a conviction, and always expect to earn a pardon. Accomplices are therefore of a tainted character, giving their testimony under the strongest motives to deceive. And it is said . . . [though accomplices] are clearly competent witnesses, their single testimony alone is seldom of sufficient weight with the jury to convict the offenders; it being so strong a temptation to a man to commit perjury if by accusing another he can escape himself.

*Hoyt v. People*, 140 Ill. 588, 595-96, 30 N.E. 315 (1892) (internal quotations and citations omitted). Therefore, though early cases enabled conviction from uncorroborated accomplice testimony, the testimony was consistently considered unreliable, and this Court sought to combat that unreliability by establishing the accomplice corroboration rule in 1911. This Court determined that instructing jurors of the testimony's untrustworthiness was wholly insufficient and departed from the general rule of simply cautioning jurors about the unreliability of accomplice testimony.

The 1911 *Luery* Court, which established the accomplice corroboration rule in this State, noted the following:

> [I]t is unsafe, at least in the great majority of cases, to rest a conviction upon the uncorroborated evidence of an accomplice. . . . [An accomplice] . . . has as a motive the prospect of freedom, a milder sentence, or the favor of the officers who have him in charge, an innocent one may undoubtedly be made to suffer, if great caution is not used. Hence it would seem to be safer to require some corroboration. . . . [O]ne effective way of affording relief is for the trial court not to permit a conviction to stand if based exclusively on such [accomplice] testimony[.]

116 Md. 684, 81 A. at 681. The *Luery* Court recognized the unreliability of accomplice testimony and imposed the Rule as a way to safeguard defendants' rights. Since *Luery*, Maryland courts "have steadfastly adhered to [the] [R]ule" that "a conviction may not rest on the uncorroborated testimony of an accomplice." *Woods v. State*, 315 Md. 591, 616, 556 A.2d 236, 248 (1989) (internal citation omitted).

The rationale for the Rule was reasserted in the 1955 *Watson* decision, which clarified the corroboration requirement as follows:

4

The reason for the rule requiring the testimony of an accomplice to be corroborated is that it is the testimony of a person admittedly contaminated with guilt, who admits his participation in the crime for which he particularly blames the defendant, and it should be regarded with great suspicion and caution, because otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence.

*Watson v. State*, 208 Md. 210, 217, 117 A.2d 549, 552 (1955).

In 1977, this Court considered "whether the long-standing [Rule] . . . should be abandoned." *Brown*, 281 Md. 241, 242, 378 A.2d 1104, 1105 (1977). We affirmed the Rule—noting "the need to retain the accomplice corroboration requirement due to the escalating prosecutorial trend to freely utilize accomplices as State witnesses[,]" *In re Anthony W.*, 388 Md. 251, 265, 879 A.2d 717, 725 (2005)—and again rejected the general approach favoring the uncorroborated testimony of an accomplice. We restated our conclusion in *Luery*: "that it is 'safer to require some corroboration' of accomplice testimony[ ]" than no corroboration at all. 281 Md. at 246, 378 A.2d at 1108 (quoting *Luery*, 116 Md. at 293, 81 A. 681).

In 2005, this Court was tasked, as a matter of first impression, with determining if the Rule applied to juvenile proceedings. We concluded that "the same concerns regarding the potentially untrustworthy nature of an accomplice's testimony in adult criminal proceedings . . . are also present in juvenile cases . . . [and] the interest of trustworthy evidence applies with equal force regardless of the age of the person accused." *In re Anthony W.*, 388 Md. at 272, 879 A.2d at 729 (2005). Our holding expanded the Rule to

juvenile proceedings based on our longstanding recognition that accomplice testimony is inherently unreliable.

The history of the accomplice corroboration rule demonstrates that we have maintained "a bright-line protection of the accused from being convicted solely on the word of individuals with a powerful motive for tailoring their testimony[.]" Surely, maintaining the Rule is consistent with our case law and the principle of *stare decisis*. But retaining the Rule is also an effective mechanism for safeguarding defendants' rights.

(iii)    *Mandatory Jury Instructions*

The Majority seeks to abrogate the Rule. However, case law, discussed *supra*, reveals that courts have consistently viewed accomplice testimony with skepticism, and that this State—since 1911—has not found that mandatory jury instructions, providing that accomplice testimony may be unreliable, is sufficient for combatting the biases and harms that arise from such testimony. The Rule provides more than a cautionary instruction and serves to safeguard defendants from accomplice testimony that may be motivated by an accomplice's self-gain. We find a mandatory instruction, in lieu of the Rule, untenable for preserving defendants' rights against accomplices who may be guilty counterparts in an offense, yet are motivated by self-interest to hide or minimize the extent of that guilt. The Majority's proposed solution for a jury instruction—which *already* exists in the Maryland State Bar Association's Criminal Pattern Jury Instruction 3:11A—does not combat the untrustworthiness of accomplice testimony. We further caution against the potential trend of accepting the testimony of accomplices in cases where additional investigation, or slight evidence of corroboration, is critical for establishing guilt. We must retain the Rule, as we

6

have since the 1911 *Luery* decision, in order to safeguard against the inherent problems that arise from accomplice testimony.

*(iv) Arbitrariness*

The Majority provides several examples to illustrate that "[t]he arbitrariness of the accomplice corroboration rule is amplified when one considers that there is no similar rule for other interested witnesses." *Slip op.* at 16. The Majority provides that testimony from jailhouse informants, expert witnesses, and eye-witnesses does not require independent corroboration. However, none of these examples are before us. Such examples are red herrings that distract us from the pertinent matter, and do not directly address the unreliability and untrustworthiness of *accomplice* testimony.

*(v) The Jury's Role as Fact-Finder*

We do not propose departing from the province of the jury as fact-finder. However, we do express well-warranted skepticism regarding accomplice testimony. We do not believe that accomplice testimony is sufficient to convict a defendant and deprive that defendant of his or her liberty. As such, we would maintain the Rule: defendants cannot be convicted solely on the testimony of an accomplice and there must be corroboration of the corpus delicti of the crime—*i.e.*, evidence that identifies a defendant with the perpetrators of the crime at or near the time the crime was committed—however slight, to convict. Contrary to the Majority, we believe that "slight corroboration" strikes the proper balance for an evidentiary determination. The requirement of providing slightly more evidence to convict does not translate into usurping a jury's fact-finding role. We have not held, nor does this dissent suggest, that it is necessary to proffer extensive corroboratory

7

evidence. However, the risk of wrongfully convicting defendants based on the testimony of incentivized accomplices warrants that we maintain the important protection of slight corroboration. By contrast, the Majority seeks to strip away this protection.[2] We conclude that the Court should not abrogate the accomplice corroboration rule because of the inherent untrustworthiness of accomplice testimony. We respectfully disagree with the Majority's assertion that a mandatory instruction will adequately rectify the unreliability of such testimony. Accordingly, we dissent with the Majority on this issue.

Judge Greene has authorized me to state that he joins in this opinion.

---

[2] The Rule requires judicial confirmation that independent evidence corroborating accomplice testimony exists. By maintaining the Rule, we retain the essential role of trial judges as "gatekeepers" without stripping away the jury's role as fact finders. *Jackson v. State*, 460 Md. 107, 120, 188 A.3d 975, 983 (2018) (providing that "the essential role of the trial judge [is] as [a] 'gatekeeper.'") (internal citations omitted). It is our duty, as judges, to ensure that only evidence that is properly before the jury falls within its deliberations. *Id.* at 119, 188 A.3d at 982. Here, the uncorroborated testimony of Mr. Jones's accomplices raises significant concerns as to their reliability.